THIS CASE IS NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 12-7129
_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

BRUNO K. MPOY,
Plaintiff-Appellant

v.

MICHELLE RHEE, et al.,
Defendant-Appellees.

Appeal from the United States District Court for the District of Columbia
_____

BRIEF FOR DEFENDANT-APPELLEE MICHELLE RHEE
_____

William L. Drake
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Phone: 202-429-3000
WDrake@steptoe.com
*Counsel for Defendant-Appellee
Michelle Rhee*

August 9, 2013

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| **BRUNO K. MPOY,** | ) | |
| **Plaintiff-Appellant,** | ) | |
| **v.** | ) | **Case No. 12-7129** |
| **MICHELLE RHEE, et al.,** | ) | |
| **Defendant-Appellees.** | ) | |

## DEFENDANT-APPELLEE MICHELLE RHEE'S CERTIFICATE UNDER CIR. R. 28(a)(1) AS TO PARTIES, RULINGS AND RELATED CASES

### A.    PARTIES AND AMICI

All parties, intervenors, and amici appearing before the District Court and in this court are listed in the Brief for Appellant.

### B.    RULINGS UNDER REVIEW

References to all rulings at issue appear in the Brief for Appellant.

### C.    RELATED CASES

All related cases appear in the Brief for Appellant.

 /s/ William L. Drake
William L. Drake (Bar # 54517)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Phone: 202-429-3000
WDrake@steptoe.com
*Counsel for Defendant-Appellee*
*Michelle Rhee*

Dated:    August 9, 2013

# Table of Contents

**Page**

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ........................................................................................... 1

STATUTES AND REGULATIONS ....................................................... 1

STATEMENT OF ISSUES PRESENTED .............................................. 1

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF FACTS ...................................................................... 3

SUMMARY OF ARGUMENT ............................................................... 5

LEGAL STANDARD ............................................................................. 9

ARGUMENT .......................................................................................... 11

I.    Mr. Mpoy's First Amendment Claim Fails as a Matter of Law
      Because His Alleged Speech Was Not Protected .......................... 11

      A.    Mr. Mpoy's Email Is Not Protected Speech Because Its Form
            and Context Indicate That He Wrote It as a Teacher, Not as a
            Private Citizen; Even if His Speech Was "Mixed" Mr. Mpoy
            Spoke Predominantly as a Public Employee ....................... 15

      B.    Mr. Mpoy's Email Is Not Protected Speech Because It Was a
            Report of Conduct That Interfered with His Job Responsibilities
            as a Public School Teacher ................................................. 19

      C.    Mr. Mpoy's Email Is Not Protected Speech Because It Was a
            Recommendation Directly Related to His Job Made to a
            Supervisor Within His Chain of Command. ........................ 25

II.   Ms. Rhee Is Shielded from Mr. Mpoy's First Amendment Claim by
      the Doctrine of Qualified Immunity. ............................................. 30

A.    Mr. Mpoy Has Not Adequately Pleaded a First Amendment
      Claim Against Ms. Rhee. ...................................................................31

B.    The Right of a Public Employee to Speak as Mr. Mpoy Did Is
      Not Clearly Established.......................................................................31

CONCLUSION .........................................................................................................33

Certificate of Compliance with Type-Volume Limitation,
      Typeface Requirements, and Type Style Requirements ...............................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abcarian v. McDonald*,
   617 F.3d 931 (7th Cir. 2010) ....................................................................13, 15

*Adams v. N.Y. State Educ. Dep't*,
   752 F. Supp. 2d 420 (S.D.N.Y. 2010) ........................................13, 23, 24, 26, 32

*Alberti v. Univ. of P.R.*,
   818 F. Supp. 2d 452 (D.P.R. 2011) ....................................................................16

*Anderson v. Creighton*,
   483 U.S. 635 (1987)..........................................................................................32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................9, 10

*Atherton v. District of Columbia*,
   567 F.3d 672 (D.C. Cir. 2009)..........................................................................10

*Bailey v. Dep't of Elementary & Secondary Educ.*,
   451 F.3d 514 (8th Cir. 2006) ............................................................................16

* *Bame v. Dillard*,
   637 F.3d 380 (D.C. Cir. 2011)..........................................................................31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................10

*Bielewicz v. Penn-Trafford Sch. Dist.*,
   Civil Action No. 10-1176, 2013 WL 1290527
   (W.D. Penn. Jan. 29, 2013)...............................................................................24

* *Boyce v. Andrew*,
   510 F.3d 1333 (11th Cir. 2007) .......................................................13, 15, 16, 18

*Brammer-Hoelter v. Twin Peaks Charter Academy*,
   492 F.3d 1192 (10th Cir. 2007) ........................................................................22

Authorities upon which we chiefly rely are marked with asterisks.

*Butera v. District of Columbia*,
   235 F.3d 637 (D.C. Cir. 2001)..............................................................31

*Connick v. Myers*,
   461 U.S. 138 (1983)...........................................................................11

\* *Davis v. McKinney*,
   518 F.3d 304 (5th Cir. 2008) ...............................................26, 27, 32

*Dodds v. Childers*,
   933 F.2d 271 (5th Cir. 1991) ........................................................17, 18

*Ferrara v. Mills*,
   781 F.2d 1508 (11th Cir. 1986) ..........................................................18

\* *Garcetti v. Ceballos*,
   547 U.S. 410 (2006)........................................................11, 12, 19, 21

*Harbury v. Deutch*,
   233 F.3d 596 (D.C. Cir. 2000)............................................................32

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)...........................................................................30

\* *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.,*
   635 F.3d 685 (5th Cir. 2011) ........................................................17, 18

*Haynesworth v. Miller*,
   820 F.2d 1245 (D.C. Cir. 1987)............................................................9

*In re United Mine Workers of Am. Emp. Benefit Plans Litig.*,
   854 F. Supp. 914 (D.D.C. 1994)...........................................................9

*Jones v. Quintana*,
   658 F. Supp. 2d 183 (D.D.C. 2009).....................................................11

*Jung v. Ass'n of Am. Med. Colls.*,
   339 F. Supp. 2d 26 (D.D.C. 2004)........................................................9

*Kelly v. Huntington Union Free Sch. Dist.*,
    No. 09-CV-2101 (JFB)(ETB), 2012 WL 1077677
    (E.D.N.Y. Mar. 30, 2012) ...........................................................26, 32

*Maggio v. Sipple*,
    211 F.3d 1346 (11th Cir. 2000) ........................................................18

*Mercado-Berrios v. Cancel-Alegria*,
    611 F.3d 18 (1st Cir. 2010)...............................................................19

*Papasan v. Allain*,
    478 U.S. 265 (1986).........................................................................10

*Paterakis v. School District*,
    No. 6:09-cv-269-Orl-19KRS, 2009 WL 2423113
    (M.D. Fla. Aug. 4, 2009) .................................................................24

*Ramey v. U.S. Marshals Serv.*,
    755 F. Supp. 2d 88 (D.D.C. 2010).....................................................21

*Reinhardt v. Albuquerque Public Schools Board of Education*,
    595 F.3d 1126 (10th Cir. 2010) ........................................................22

*Rodriguez v. Int'l Leadership Charter Sch.*,
    No. 08 Civ. 1012 (PAC), 2009 WL 860622 (S.D.N.Y. Mar. 30, 2009) ...........19

*Ross v. Breslin*,
    693 F.3d 300 (2d Cir. 2012) .............................................................29

* *Saucier v. Katz*,
    533 U.S. 194 (2001).....................................................................30, 31

*Shums v. N.Y.C. Dep't of Educ.*,
    04-CV-4589 (DLI)(LB), 2009 WL 750126 (E.D.N.Y. Mar. 17, 2009) .......26, 32

* *Tabb v. District of Columbia*,
    605 F. Supp. 2d 89 (D.D.C. 2009)................................................13, 15

*Taylor v. FDIC*,
    132 F.3d 753 (D.C. Cir. 1997) ..........................................................10

* *Thompson v. District of Columbia*,
  530 F.3d 914 (D.C. Cir. 2008)............................................. 12, 13, 14, 25, 28, 29

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ...........................................................................10

* *Weintraub v. Bd. of Educ.*,
  593 F.3d 196 (2d Cir. 2010) ..............................................................................21

*Williams v. Dall. Indep. Sch. Dist.*,
  480 F.3d 689 (5th Cir. 2007) (per curiam) ........................................................21

* *Winder v. Erste*,
  566 F.3d 209 (D.C. Cir. 2009).................................................11, 13, 19, 23, 25

## CONSTITUTIONS

U.S. Const. amend. I ................................... 1-2, 5-9, 11-14, 18-19, 23, 25-26, 28-33

## STATUTES

42 U.S.C. § 1983 ................................................................................................30

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................................9

Fed. R. Civ. P. 12(c)............................................................................................9

## GLOSSARY

| Abbreviation | Definition |
|---|---|
| DC-CAS | District of Columbia Comprehensive Assessment System |
| DCPS | The District of Columbia Public Schools |
| Mem. Op. | The District Court's Memorandum Opinion issued November 5, 2012, which granted Defendants-Appellees' Motions for Judgment on the Pleadings |

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Brief for Appellant.

## STATEMENT OF ISSUES PRESENTED

1.  Public employees enjoy First Amendment protection only for speech they make as private citizens.  When a teacher makes an allegation to his school district's chancellor about interference with his duty to ensure student achievement, is he speaking as a private citizen or as a teacher?

2.  Public officials are shielded from liability for civil damages insofar as their conduct does not violate a clearly established constitutional right. When Mr. Mpoy was terminated in 2008, was it clearly established that a teacher's report, made up his chain of command, about interference with his assessment of students was protected by the First Amendment?

## STATEMENT OF THE CASE

Appellant Mr. Mpoy filed a Second Amended Complaint ("complaint") in

the United States District Court for the District of Columbia against the

government of the District of Columbia as well as against Appellees

Dr. Presswood and Ms. Rhee.  In his complaint, Mr. Mpoy alleged the District of

Columbia terminated his employment with DCPS in violation of District of

Columbia whistleblower laws and in breach of contract.  He further alleged that

Dr. Presswood and Ms. Rhee terminated him in violation of his First Amendment

rights.  The District of Columbia, Dr. Presswood and Ms. Rhee filed answers to

Mr. Mpoy's complaint and moved the District Court for judgment on the

pleadings.  The District Court awarded judgment to Dr. Presswood and Ms. Rhee

based on a finding that Mr. Mpoy had not adequately pleaded he was terminated in

violation of his constitutional rights and on a finding that they were both entitled to

qualified immunity.  The District Court declined to exercise supplemental

jurisdiction over Mr. Mpoy's remaining claims.  Mr. Mpoy appealed the District

Court's decision only as to the District Court's judgment on the pleadings for

Dr. Presswood and Ms. Rhee.  For purposes of this appeal, the allegations in

Mr. Mpoy's complaint and an email message[1] he sent to Ms. Rhee constitute the

factual record.

---

[1] The District Court relied on Mr. Mpoy's June 2, 2008 email to Ms. Rhee
because it was attached to an earlier version of his complaint and referenced
throughout his complaint.  Mem. Op. at J.A. 71.  Furthermore, in his brief to this
Court, Mr. Mpoy identifies the email as the speech that caused his termination.
Mpoy Br. at 35.

## STATEMENT OF FACTS

In April 2007, Mr. Mpoy was hired by DCPS as a probationary employee and assigned to be a special education teacher at Ludlow Elementary School ("Ludlow") for the 2007-2008 school year.  J.A. 25, ¶¶ 28-29.  Mr. Mpoy's first and only year as a special education teacher was marked by conflict with his teaching aides over their personal hygiene and behavior, as well as a series of warning letters from his principal, Appellee Dr. Presswood, beginning in January 2008.  J.A. 31-32, ¶¶ 80-81; J.A. 54, ¶¶ 2-3.  Dr. Presswood reprimanded Mr. Mpoy for, among other things, excessive tardiness, failure to follow lesson plans, failure to escort his special education students during a fire drill, and the use of corporal punishment.  J.A. 31-32, ¶¶ 80-81, 85.  At the end of the school year, in May of 2008, Mr. Mpoy was suspended without pay for insubordination.  J.A. 32, ¶¶ 82-83; J.A. 52.

On June 2, 2008, on the heels of his suspension, Mr. Mpoy sent a 1,300-word email to Ms. Rhee, then-Chancellor of DCPS.  J.A. 52-56.  Mr. Mpoy listed numerous grievances about his experience at Ludlow in his email to Ms. Rhee. Among other complaints, Mr. Mpoy alleged that Dr. Presswood suspended him without pay; Mr. Mpoy was denied access to his personnel file; his school emails were deleted; his classroom clock was broken; Mr. Mpoy's teaching assistants showed his students the movie *Cinderella*, dressed inappropriately, and had dirt

under their finger nails; and Dr. Presswood did not provide him feedback from an in-class observation or respond to Mr. Mpoy's twenty complaint-filled emails. J.A. 52. One line of Mr. Mpoy's email to Ms. Rhee read, "Dr. Presswood, the principal of Ludlow Taylor, misrepresented students' performance and results on the DCCAS Alternative." J.A. 52.

At another point in his email to Ms. Rhee, Mr. Mpoy noted that he had warned Dr. Presswood in the past that he was willing to go over the principal's head and take complaints about his teaching assistants directly to the school chancellor. J.A. 52-53. Mr. Mpoy's complaint contains no allegation that he communicated with Ms. Rhee in any way other than sending the June 2, 2008 email.

In a preamble to his June 2, 2008 email to Ms. Rhee, Mr. Mpoy wrote that his "primary duty is to ensure student achievement." J.A. 52. Specifically, part of Mr. Mpoy's job as a DCPS special education teacher was to assess his students' progress and achievement using the DC-CAS Alternative test. J.A. 30, ¶¶ 65-66.

On August 19, 2008, Mr. Mpoy received a letter from DCPS terminating his employment. J.A. 34, ¶ 100. The letter informed him he was being terminated "based on input from your principal and your status as a probationary employee." J.A. 34, ¶ 102. Mr. Mpoy alleges that Ms. Rhee and Dr. Presswood terminated his employment in retaliation for his June 2, 2008 email, specifically for his allegation

that Dr. Presswood misrepresented student performance and results on the DC-CAS Alternative test.  J.A. 35, ¶ 110.

Based on these alleged facts, the defendants below requested judgment on the pleadings.  The District Court granted that request based on a finding that the facts alleged by Mr. Mpoy are insufficient to plead a First Amendment violation and that both Dr. Presswood and Ms. Rhee were entitled to qualified immunity.

## <u>SUMMARY OF ARGUMENT</u>

A public employee may not constitutionalize an employment grievance. Public employees only retain First Amendment protection for speech they make as private citizens, not speech they make pursuant to their job responsibilities.  In this Court, the form and context of speech can indicate that the speech was written from the perspective of an employee, not a private citizen.  Likewise, a public employee's statement that directly relates to his or her job, that is made within his or her chain of command, is not private citizen speech.  Lastly, a public employee's report of conduct that interferes with his or her job responsibilities, regardless of audience, is not protected.  The speech at issue in this appeal meets each of these three standards, any one of which would be sufficient grounds to find that the speech is unprotected and the complaint should be dismissed.

Mr. Mpoy argues that his June 2, 2008 email to Ms. Rhee was transformed from a grievance into constitutionally protected speech because one sixteen-word

line, taken in isolation, was not written pursuant to his job responsibilities, as he now defines them.  He alleges that he was terminated by DCPS in violation of his First Amendment rights for writing that one line, in which he accused Dr. Presswood of misrepresenting student assessments.[2]

Precedent from this and other circuits is clear: even taking all of Mr. Mpoy's allegations as true, his arguments fail because his speech is not protected by the First Amendment.  Mr. Mpoy's speech is not protected for three reasons: (1) his email has all the indicia of speech written as a teacher, not a citizen; (2) his email is a report of conduct that interfered with his job responsibilities; and (3) his email consists of recommendations directly related to his job made within his chain of command.  Any one of these three grounds is sufficient for this Court to uphold the District Court's decision.

First, while Mr. Mpoy argues that the District Court should have analyzed in isolation his "reporting" of Dr. Presswood's alleged misrepresentation of student assessments, his email as a whole has the form and context of unprotected speech.  Mr. Mpoy suggests that one line in his email stands apart as an issue of public

---

[2] In his complaint, Mr. Mpoy alleged he had been terminated for writing the entirety of his email to Ms. Rhee and that he was "under no duty, contractually or otherwise, to make [his] disclosures." 35-36, ¶¶ 111-118.  For the purposes of this appeal, Mr. Mpoy argues that only the one line about Dr. Presswood's alleged misrepresentations of student assessments was not written pursuant to his job responsibilities and that, therefore, "the Court need not trouble with whether those [other] statements were made pursuant to official duties."  Mpoy Br. at 24 n.3.

concern.  But, a public employee may not transform a personal grievance into a matter of public concern by simply invoking a supposed popular interest.

Moreover, even if Mr. Mpoy's email is "mixed speech" dealing with issues both public and private, the relevant inquiry is not whether the public would be interested in the topics he raised, but whether he spoke predominantly as a citizen, rather than as an employee.  A simple reading of the email shows he spoke not as a citizen, but in his capacity as a teacher.

Second, Mr. Mpoy's email to Ms. Rhee is, on its face, a list of complaints regarding interference by his aides and principal with his teaching responsibilities. As a preamble to this list, Mr. Mpoy wrote that his "primary duty is to ensure student achievement."  Courts have considered this issue and held that the assessment of student achievement is a teacher's responsibility.  It is disingenuous for Mr. Mpoy to now argue that he did not write the email to report interference with that responsibility.  Further, while Mr. Mpoy argues strenuously that his speech was protected by the First Amendment because he had no "duty" to make his report to Ms. Rhee, this is not the applicable legal standard.  In fact, no such "duty to speak" is required for public employee speech to fall outside of the First Amendment's ambit.

Third, despite Mr. Mpoy's argument that Ms. Rhee was so far up his chain of command as to be effectively outside of it, this contention has no support in case

law and is undone by the speech in question. Mr. Mpoy's decision to write

Ms. Rhee an email complaining about his job, his suspension and interference from

his co-workers is sufficient evidence that in June of 2008 he believed she was one

of his supervisors. Furthermore, Mr. Mpoy wrote in the email that he had

threatened in the past to go over Dr. Presswood's head and take his complaints

about his teaching aides directly to Ms. Rhee unless those complaints were

resolved to his liking. Courts have held in similar circumstances that, when an

employee makes a report to the more senior supervisor, the report is made up the

chain of command. No matter what Mr. Mpoy now argues, when he wrote the

email to Ms. Rhee, he clearly believed she was within his chain of command.

Lastly, regardless of whether he has adequately pleaded a First Amendment

violation, Mr. Mpoy argues that Ms. Rhee should not be protected by the doctrine

of qualified immunity. He contends that he had a clearly established constitutional

right to send his complaints to Ms. Rhee without retaliation in 2008. Mr. Mpoy

can make this claim only by ignoring clear precedent, both in this and other

circuits, holding just the opposite, in some cases with facts very similar to his own

allegations. Following what it called a "substantial body of caselaw," the District

Court held below that, based on Mr. Mpoy's allegations, no violation of his

constitutional rights had occurred. Mem. Op. at J.A. 75. In fact, Mr. Mpoy is

unable to cite to any precedent containing allegations similar to his own in which a

Court has found a constitutional violation.  Because Mr. Mpoy's right was not clearly established, Ms. Rhee is entitled to qualified immunity.

The District Court correctly held that Mr. Mpoy's complaints are not protected by the First Amendment and that any constitutional right to engage in such speech without discipline was not clearly established in 2008.  The dismissal of Mr. Mpoy's complaint should, therefore, be affirmed.

## LEGAL STANDARD

The appropriate standard for reviewing a motion for judgment on the pleadings is "virtually identical" to that applied to a motion to dismiss under Rule 12(b)(6).  *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6).").

In evaluating a Rule 12(c) motion for judgment on the pleadings, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 557 (2007)).

A court need not accept as true "a legal conclusion couched as a factual

allegation," nor an inference unsupported by the facts set forth in the complaint.

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*,

478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Moreover, a court is

not bound to accept the legal conclusions of the non-moving party.  *See Taylor v.*

*FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  Where the well-pleaded facts set forth

in the complaint do not permit a court, drawing on its judicial experience and

common sense, to infer more than the "mere possibility of misconduct," the

complaint has not shown that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at

679.

The standard of review of Mr. Mpoy's appeal is *de novo*.  *Atherton v.*

*District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009).

## ARGUMENT

**I.    Mr. Mpoy's First Amendment Claim Fails as a Matter of Law Because His Alleged Speech Was Not Protected.**

A public employee like Mr. Mpoy[3] "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). At the same time, "the government as employer is free to control the content of 'speech that owes its existence to a public employee's professional responsibilities.'" *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Therefore, "[t]he threshold question for a public employee's First Amendment claim is 'whether the employee spoke as a citizen on a matter of public concern.'" *Id.* at 214. (quoting *Garcetti*, 547 U.S. at 418). An employee does not speak as a citizen – and is therefore unprotected by the First Amendment – if he or she speaks "pursuant to employment responsibilities." *Garcetti*, 547 U.S. at 424. The District Court below found that Mr. Mpoy's speech was "'part and parcel' of his concerns as a school teacher," and thus unprotected speech. Mem. Op. at J.A. 71.

For the purposes of his appeal, whether Mr. Mpoy spoke on matters of public concern need not be reached by this Court. Instead, as stated in *Jones v.*

---

[3] The parties do not dispute that Mr. Mpoy was a public employee at the time he made the speech in question.

*Quintana*, the "critical inquiry" is whether a public employee spoke pursuant to job responsibilities.  658 F. Supp. 2d 183, 193 (D.D.C. 2009); *see also* Mem. Op. at J.A. 66 (noting that *Garcetti* requires "a court to first consider whether the public employee's speech was pursuant to his official duties; only if it finds that the employee is speaking as a private citizen and not pursuant to his official duties will a court proceed to review the content of the speech.").  Therefore, despite Mr. Mpoy's significant discussion of the topic in his brief, the Court need not reach the question of whether his speech related to matters of public concern if it finds he was speaking as an employee.

The Supreme Court in *Garcetti* declined to "to articulate a comprehensive framework for defining the scope" of a public employee's job responsibilities. *Garcetti*, 547 U.S. at 424.  Instead, the Court held that "[t]he proper inquiry is a practical one" and the determination does not hinge on an employee's formal job description:

> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Id*. at 424-25; *see also Thompson v. District of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008).  Therefore, when "resolv[ing] a motion to dismiss a First Amendment retaliation claim as a matter of law under the *Twombly/Iqbal* plausibility analysis,"

courts should make "an objective, practical and common sense appraisal of a

public employee's official duties" rather than "relying solely on the factual or

conclusory allegations contained in Plaintiffs' pleadings about what their job

description includes or does not provide for as part of their official duties."

*Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 428 (S.D.N.Y. 2010).

As part of their objective, practical, and common sense appraisals, courts

examine the form and context of speech made by a public employee for indications

of whether the employee intended to speak pursuant to his job responsibilities or

from the perspective of a private citizen.  *See Tabb v. District of Columbia*, 605 F.

Supp. 2d 89, 94 (D.D.C. 2009); *see also Abcarian v. McDonald*, 617 F.3d 931, 937

(7th Cir. 2010) (holding that a court must analyze the context in which the

statements were made in order to determine if they were protected speech); *Boyce*

*v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007).

In addition to examining the form and context of speech, courts also

consider the audience and content.  Two cases from this Circuit speak directly to

the proper standard for determining whether speech like Mr. Mpoy's is made as a

private citizen or pursuant to job responsibilities.  First, in *Winder v. Erste*, this

Court held that "a public employee speaks without First Amendment protection

when he reports conduct that interferes with his job responsibilities . . . ."  566 F.3d

209, 215 (D.C. Cir. 2009).  Second, in *Thompson v. District of Columbia*, this

- 13 -

Court held that "[o]rdinarily, employees who make recommendations to their supervisors on subjects directly related to their jobs are carrying out their official duties and thus receive no First Amendment protection." 530 F.3d 914, 916 (D.C. Cir. 2008).

Mr. Mpoy argues that the District Court erred in holding that his speech was not protected by the First Amendment. In fact, the District Court properly applied applicable precedents to conclude from a variety of factors – including the form, context, and content of Mr. Mpoy's email – that his speech was made pursuant to his job responsibilities. The District Court's finding that the audience of Mr. Mpoy's alleged speech was within his chain of command provided "further support[]" for its conclusion that Mr. Mpoy's speech was made pursuant to his job responsibilities, and was consistent with substantial caselaw holding that a public school teacher's complaint to a district superintendent is made up the chain of command. Mem. Op. at J.A. 76.

Mr. Mpoy cannot prevail on his First Amendment claim, and this Court should affirm the decision of the District Court, because Mr. Mpoy's June 2, 2008 email – his only alleged communication to Ms. Rhee and the only speech he alleges resulted in his termination – (1) had a form and context indicative of employee speech; (2) reported conduct that interfered with his job responsibilities; and (3) consisted of recommendations directly related to his job made to a

supervisor within his chain of command.  Any one of these grounds is sufficient to

support a finding that Mr. Mpoy's speech was not protected.

> **A.     Mr. Mpoy's Email Is Not Protected Speech Because Its Form and Context Indicate That He Wrote It as a Teacher, Not as a Private Citizen; Even if His Speech Was "Mixed" Mr. Mpoy Spoke Predominantly as a Public Employee.**

The form and context of speech made by a public employee are indicative of

whether the employee intended to speak pursuant to his or her job responsibilities

or from the perspective of a private citizen.  *See Tabb v. District of Columbia*, 605

F. Supp. 2d 89, 94 (D.D.C. 2009); *see also Boyce*, 510 F.3d at 1344.

The Seventh Circuit held in *Abcarian v. McDonald* that "[w]hen determining

whether a plaintiff spoke as an employee or a citizen, we take a practical view of

the facts alleged in the complaint . . . *and the context in which the statements were

made.*"  617 F.3d at 937 (emphasis added).  In *Boyce v. Andrew*, the Eleventh

Circuit held that a public employee's speech, when viewed in context, was "not

intended to address matters of public concern *from the perspective of a citizen*."

510 F.3d at 1344-45 (emphasis added).

The context of Mr. Mpoy's complaints to Ms. Rhee is telling.  As described

in the Statement of Facts, *supra*, when he sent his email in the spring of 2008,

Mr. Mpoy was a probationary teacher having trouble with his principal, his teacher

aides, the state of his classroom, and a lack of school supplies.  He had received

multiple warning letters in the preceding months for, among other things, excessive

tardiness, failure to follow lesson plans, failure to escort his special education

students during a fire drill, and the use of corporal punishment, and he was

suspended without pay in May 2008.  Mr. Mpoy had sent his principal twenty

emails detailing his frustrations without, allegedly, receiving any responses.  He

had already threatened to go over the head of his principal to submit his complaints

directly to Ms. Rhee.  The District Court recognized as much when it stated that,

"[t]he 'form and context'" in which Mpoy's complaints were made "'are indicative

of the fact that they intended to address only matters connected with' his job at

Ludlow."  Mem. Op. at J.A. 73 (quoting *Boyce*, 510 F.3d at 1343).

       With regard to the form of speech, courts have held that when an employee

uses his or her official title in a communication, the speech is more likely to be

made pursuant to job responsibilities.  *See, e.g.*, *Bailey v. Dep't of Elementary &*

*Secondary Educ.*, 451 F.3d 514, 520 (8th Cir. 2006); *Alberti v. Univ. of P.R.*, 818

F. Supp. 2d 452, 473 (D.P.R. 2011).  Mr. Mpoy signed his email, "Bruno K. Mpoy,

Special Education Teacher, Ludlow Taylor ES," providing further evidence that

Mr. Mpoy was speaking as a teacher.  J.A. 56.

       The form and context of Mr. Mpoy's speech, when viewed together, are not

indicative of citizen speech.  Upset about his job, his subordinates, and his boss,

Mr. Mpoy aired his grievances by sending a list of his many complaints to the top

supervisor at DCPS, just as he had threatened his immediate supervisor that he

would do.  He began his email by writing to Ms. Rhee:

> I am a special education teacher at Ludlow Taylor ES.  As a teacher,
> my primary duty is to ensure student achievement.  I strive to create
> and maintain a safe and appropriate environment conducive to
> learning.

J.A. 52.  The form and context of Mr. Mpoy's email message to Ms. Rhee are not

indicative of protected speech, because he wrote to her as a teacher, not as a private

citizen.

    Mr. Mpoy argues that the District Court should have analyzed in isolation

his complaint about Dr. Presswood's alleged misrepresentation of student

evaluations because the issue "stands uniquely apart from the rest of his

communication" in reporting "malfeasance and fraud" with respect to which he

had no managerial, administrative, or supervisory responsibilities.  Mpoy Br. at 23-

24.  As set forth in Sections I.B. and I.C., *infra*, even in isolation, Mr. Mpoy's

statement regarding Dr. Presswood was made not as a private citizen, but pursuant

to Mr. Mpoy's job responsibilities.  Even if that statement was not made pursuant

to job responsibilities, Mr. Mpoy's communication as a whole was not

"predominantly" written as a private citizen.  *See Harris ex rel. Harris v. Pontotoc

Cnty. Sch. Dist.,* 635 F.3d 685, 692 (5th Cir. 2011) (citing *Dodds v. Childers*, 933

F.2d 271, 274 (5th Cir. 1991)).  Therefore no constitutional protections attached to

the speech.

Mr. Mpoy plucks one item of supposed public interest from his grab-bag of typical employee grievances in an effort to distract from the overall form and context of his email.  A public employee, however, "may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run."  *Boyce*, 510 F.3d at 1344 (citing *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)).  "[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the *purpose* of the speech was to raise issues of public concern."  *Id.* (citing *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (alteration in original) (emphasis added) (internal quotation marks omitted).  In cases of mixed speech or motives, "the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection."  *Harris ex rel. Harris,* 635 F.3d at 692 (citing *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir.1991)).

Even if this Court finds that Mr. Mpoy's email to Ms. Rhee involved mixed speech, it is clear that Mr. Mpoy spoke predominantly as an employee, rather than as a citizen, when he wrote the email.  Despite Mr. Mpoy's current efforts to depict his email as ringing an alarm bell on issues of "malfeasance and fraud," a review of the email shows that Mr. Mpoy's one, sixteen-word line addressing misrepresentation of student assessments was buried within a 1,300-word catalogue of complaints that ranged from teaching assistants with dirty fingernails

to malfunctioning clocks. The District Court noted that of Mr. Mpoy's many complaints only one of them could possibly be read to implicate issues beyond Mr. Mpoy's classroom, and that beyond that one brief mention there is "no [further] discussion of the issue." Mem. Op. at J.A. 72. Given the form, context, and predominant purpose of Mr. Mpoy's email, his efforts to transform the email into constitutionally protected citizen speech fail as a matter of law.

**B.    Mr. Mpoy's Email Is Not Protected Speech Because It Was a Report of Conduct That Interfered with His Job Responsibilities as a Public School Teacher.**

A second, independent basis exists for finding Mr. Mpoy's speech is not protected by the Constitution. This Court has held that when applying *Garcetti*, "a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities . . . ." *Winder*, 566 F.3d at 215. The First Circuit defines "reporting interference with job responsibilities" as speech that attempts to "facilitate job performance by removing (or attempting to remove) an obstacle." *Mercado-Berrios v. Cancel-Alegria*, 611 F.3d 18, 27 (1st Cir. 2010). Courts do not require such a report to be made up an employee's chain of command or to any audience in particular. *See Rodriguez v. Int'l Leadership Charter Sch.*, No. 08 Civ. 1012 (PAC), 2009 WL 860622, at *3 (S.D.N.Y. Mar. 30, 2009) (holding that whether or not a report of interference with one's duties was protected speech turned "on the substance of the plaintiff's speech in relation to her

job duties; not . . . on the identity of the individual to whom her complaint was directed"). Therefore, a finding that Mr. Mpoy's speech was a report of conduct that interfered with his job responsibilities is sufficient to dismiss his claim, regardless of whether this Court finds Ms. Rhee was within his chain of command.

As a threshold matter, it cannot be seriously debated that Mr. Mpoy's email to Ms. Rhee was a report of *interference*. In the email itself, Mr. Mpoy described his message, at least in part, as "a summary of the history of the disruption of the educational process." J.A. 53. In his complaint, Mr. Mpoy described his email as a "request[] for assistance," a "request[] [for] an investigation into the problems he encountered at Ludlow," and, at least in part, as a report of "conduct that hindered [his] ability to teach . . . ." J.A. 22, 33, ¶¶ 11, 92-93. Instead, what is debated is whether the reported conduct interfered with Mr. Mpoy's *job responsibilities*.

Rather than confront clear precedent on that question, Mr. Mpoy implies repeatedly that in order to find that a public employee spoke "pursuant to employment responsibilities," a court must determine that the employee had a duty to make the speech in question. Mr. Mpoy states in his brief that "he was not instructed, invited, or otherwise obligated by DCPS to report what he knew about Mr. Presswood" and that "[a]s a special education teacher, [he] had no duty to make these disclosures." Mpoy Br. at 25, 48. Mr. Mpoy weaves this "no duty to speak" argument throughout his complaint. *See, e.g.*, JA 35-36. At one point,

Mr. Mpoy even suggests to this Court that because he "has alleged that he was under no obligation and had no duty to report Presswood's misrepresentations to Rhee or DCPS; to the extent the Court may suspect that this allegation is factually inaccurate, that question of fact should be resolved in the district court on remand." Mpoy Br. at 25 n.4.

Whether Mr. Mpoy had a "duty" to speak, however, has no bearing on whether his email reported interference with his job responsibilities, and thus fell outside the First Amendment's protections. *See Ramey v. U.S. Marshals Serv.*, 755 F. Supp. 2d 88, 94 (D.D.C. 2010) (holding that speech was made pursuant to job responsibilities even though the employee "had no formal duty—indeed, it was a violation of [her employer]'s chain-of-command protocol—to speak" in the manner she did); *see also Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (holding that "speech can be [made] 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer"); *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (per curiam) (holding that while "an Athletic Director is not required to write memoranda to his principal regarding athletic accounts," *Garcetti* concerns speech undertaken in the course of performing one's job, not required by that job).

Mr. Mpoy's cited authority for his inventive, if misguided, "duty to speak"

doctrine is inapposite.  He claims the Tenth Circuit, in *Reinhardt v. Albuquerque*

*Public Schools Board of Education*, found that it was

> dispositive that that the plaintiff—a speech-language pathologist who
> had filed a complaint with the New Mexico Public Education
> Department alleging violations of the federal Individuals with
> Disabilities Education Act ("IDEA") by the Albuquerque Public
> School System— "was not hired to ensure IDEA compliance at
> Albuquerque public schools. She was hired to provide speech and
> language services to special education students," so that her reports
> were not pursuant to her job duties even though they related to the
> subject matter of her position.

Mpoy Br. at 19 (quoting 595 F.3d 1126, 1136 (10th Cir. 2010)).  The court in

*Reinhardt,* however, based its determination on the fact that the speech in question

was a complaint the plaintiff filed with an independent state agency after her

repeated requests to the local school board were ignored.  595 F.3d  at 1135-36.

Mr. Mpoy cites repeatedly to *Brammer-Hoelter v. Twin Peaks Charter Academy*,

492 F.3d 1192 (10th Cir. 2007), as further support for his "no duty to speak"

argument.  Again, Mr. Mpoy ignores the court's decisive finding in that case; the

teacher speech in question was protected because it was made at an after-hours

public forum, away from work, and attended by other teachers, students' parents

and members of the public.

It is immaterial whether Mr. Mpoy had a duty to report his allegation that

Dr. Presswood was misrepresenting student assessments; it is sufficient that he

spoke about an interference with his duties as a teacher to evaluate students accurately.

Next, Mr. Mpoy argues that his speech was only related to, at most, his "concerns as a teacher," and not an "attempt to implement a job function." Mpoy Br. at 27. He claims that this Court announced in *Winder* the "attempt to implement a job function" standard for analyzing whether speech was made pursuant to job responsibilities. *Id*. Mr. Mpoy argues the District Court below erred by not applying that standard. *Id*. at 26. Mr. Mpoy is incorrect for a number of reasons. The "attempt to implement a job function" text in *Winder* was specific to that case's facts that no court in this circuit has since quoted or applied. Because one of the plaintiff's specific duties in *Winder* was to "implement" court orders, this Court analyzed whether the plaintiff's speech was made pursuant to his duty to "implement" them. 566 F.3d at 211. The key, and relevant, holding from *Winder* was that "a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities . . . ." *Id*. at 215.

Furthermore, while this Court has not yet applied *Winder* to decide specifically on whether a teacher speaks pursuant to his job responsibilities when he reports interference in the accurate assessment of students, case-law from other courts is clear: accurate student assessment is one of a teacher's duties. In *Adams v. New York State Education Department*, the Southern District of New York held

- 23 -

that a teacher's complaint that a principal had falsified grades was speech made pursuant to the teacher's job responsibilities because "[o]nly in an odd Wonderland world could a court of law find it plausible that a public school principal's explicit order to a teacher directing her to falsify her own students' grades has no bearing on the teacher's official responsibilities as a teacher . . . ." 752 F. Supp. 2d 420, 430 (S.D.N.Y. 2010) (internal quotation marks omitted).  Likewise, in *Paterakis v. School District*, a teacher alleged that he was fired after complaining about his principal's improper adjustment of the grades the teacher had given his students. No. 6:09-cv-269-Orl-19KRS, 2009 WL 2423113, at *1 (M.D. Fla. Aug. 4, 2009). In that case, the court held that the teacher's complaint was made pursuant to his job responsibilities because "[a]s a public school teacher, [his] very job was to assign grades to his students."  *Id.* at *5; *see also Bielewicz v. Penn-Trafford Sch. Dist.*, Civil Action No. 10-1176, 2013 WL 1290527, at *5 (W.D. Penn. Jan. 29, 2013) (holding that "one of a teacher's core duties is assessing the academic progress of students").

Mr. Mpoy's own complaint makes clear that he agrees.  He confirms that one of the responsibilities of a special education teacher is to assess students' "progress and achievement using the 'DC-CAS Alternative'" test.  J.A. 30, ¶¶ 65-66.  Mr. Mpoy has pointed to no authority to support his argument that a teacher's job responsibilities do not include accurate student evaluations.

### C.    Mr. Mpoy's Email Is Not Protected Speech Because It Was a Recommendation Directly Related to His Job Made to a Supervisor Within His Chain of Command.

A third, independent basis exists for finding Mr. Mpoy's speech was made as public employee, not as a citizen.  In this Circuit, when public employees make recommendations to their supervisors directly related to their jobs, they speak pursuant to their duties and without First Amendment protection.  *Thompson*, 530 F.3d at 916.  While recommendations made within the chain of command are not protected, the converse is not necessarily true.  Thus, an employee's speech may fall outside the First Amendment's scope even if it is reported outside his chain of command.  *See Winder*, 566 F.3d at 215 (noting that this Court has "consistently held that a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, *even if the report is made outside his chain of command*") (emphasis added).[4]  The District Court did not err when it determined that "Mpoy raised his complaints up the chain of command."  Mem. Op. at J.A. 76.

_____

[4] Assuming, *arguendo*, that this Court finds Ms. Rhee was not within Mr. Mpoy's chain of command, his comments to her were still not protected by the First Amendment because they do not have the indicia of citizen speech and constituted a report of conduct that interfered with his job responsibilities, as described in Sections I.A. and I.B., *supra*.  Indeed, the District Court concluded for independent reasons that Mr. Mpoy's speech was made pursuant to his job responsibilities, and viewed the fact he made the speech up his chain of command as "further support[]"for this conclusion.  Mem. Op. at J.A. 76.

Because this Court's precedent is clear that an employee's recommendation to his supervisor that is related to his job is not protected by the First Amendment, Mr. Mpoy argues that the District Court erred by finding Ms. Rhee was within his chain of command.  He further urges that, even if Ms. Rhee was in his chain of command, his recommendations should nonetheless receive constitutional protection for policy reasons.  Mr. Mpoy's position, however, is not supported by precedent, the allegations in his complaint, or the speech in question.

Though the this Court has not reached the question specifically, courts outside the Circuit have held that a teacher's communication to a school system superintendent, chancellor, or state board of education is made internally or within the teacher's chain of command.  *See, e.g.*, *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB)(ETB), 2012 WL 1077677, at *13 (E.D.N.Y. Mar. 30, 2012); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 428 (S.D.N.Y. 2010); *Shums v. N.Y.C. Dep't of Educ.*, 04-CV-4589 (DLI)(LB), 2009 WL 750126, at *14-15 (E.D.N.Y. Mar. 17, 2009).  Mr. Mpoy has pointed to no precedent in which a school chancellor was found to be outside a school teacher's chain of command.

Further, Mr. Mpoy's June 2, 2008 email notes that he had already threatened Dr. Presswood with bringing complaints about teacher aides to Ms. Rhee if Dr. Presswood did not resolve the complaints to Mr. Mpoy's satisfaction.  A

similar admission served as the basis for the Fifth Circuit's conclusion in *Davis v. McKinney* that a top official who received a public employee's complaint was within the employee's chain of command. 518 F.3d at 316. In *Davis*, an auditor at one of the nine campuses of the University of Texas sent a complaint letter to the University Chancellor, the highest ranking official within the university system. *Id.* at 309. In a deposition, the auditor was asked to whom she would have gone to in the event her immediate supervisor tried to stop an audit and answered that she would have gone to the University Chancellor. *Id.* at 316. Based on this statement, the court in *Davis* held that the auditor's belief that the chancellor was within her chain of command was determinative of that question. *Id.*

Likewise, Mr. Mpoy's statements show that when he wrote his email to Ms. Rhee, he believed that he was going over his principal's head and up his chain of command. Mr. Mpoy reported in his June 2, 2008 email to Ms. Rhee that he had written twenty emails to Dr. Presswood about his complaints and received no response. J.A. 52-53. He had "stated in one of [his] e-mails to Dr. Presswood that if the paraprofessionals continued to disrupt the educational process, [he] would write directly to Chancellor Rhee and request permission to install a video camera in [his] classroom." J.A. 53. In Mr. Mpoy's complaint, he stated that he wrote the June 2, 2008 email to Ms. Rhee in order to raise "other various serious problems with the classroom environment he had brought to Presswood's attention but upon

which Presswood refused to act." J.A. 32, ¶ 86. These statements by Mr. Mpoy

show unequivocally that he believed Ms. Rhee was a superior within his chain of

command when he wrote her the June 2, 2008 email.

Mr. Mpoy then argues in the alternative that, even if Ms. Rhee was in his

chain of command, his recommendations to her should be protected by the First

Amendment. Mr. Mpoy claims that "no court has categorically held that all

statements made within an employee's 'chain of command' lack protection by the

First Amendment" and that application of the chain of command doctrine to him

"would effectively create a presumption that individuals who speak about topics

related to their jobs cannot enjoy First Amendment protection unless they speak

entirely outside their own organization." Mpoy Br. at 21, 29. The District Court's

decision creates no such precedent and no such presumption. It found that

Mr. Mpoy made complaints to his *supervisor* (rather than to just anyone at DCPS)

about issues that were "part and parcel" of his job concerns as a school teacher.

J.A. 71, 75-76. The law in this Circuit is clear that employee speech is not

protected when made within a chain of command *and* related to one's job.

*Thompson*, 530 F.3d at 916. Both of Mr. Mpoy's contentions ignore that this

Court's rule has two parts.

Notwithstanding Mr. Mpoy's dire warnings, the District Court's analysis

and holding were consistent with this Court's precedent and are not likely to result

in all speech (regardless of form, context, or content) internal to an organization (regardless of the audience within that organization) being unprotected by the First Amendment.[5]

Lastly, while Mr. Mpoy argues that an employee must make complaints sequentially to each level of supervisor up a chain of command for speech to be covered by the "chain of command" doctrine, he cites no precedent supporting this requirement.  *See* Mpoy Br. at 31.  Conversely, the Second Circuit has held that when a public employee takes "a complaint up the chain of command to find someone who will take it seriously[, it] 'does not, without more, transform [that] speech into protected speech made as a private citizen.'"  *Ross v. Breslin*, 693 F.3d 300, 307 (2d Cir. 2012) (citation omitted).  Further, Mr. Mpoy's complaint alleges he did, in fact, meet with supervisors between Dr. Presswood and Ms. Rhee prior to his termination.  J.A. 33-34, ¶¶ 94-97.  Mr. Mpoy's bare assertion that, because

---

[5] Mr. Mpoy is also incorrect in asserting that the District Court placed "substantial support for its decision" on its finding that Ms. Rhee was within Mr. Mpoy's chain of command.  The District Court concluded that Mr. Mpoy spoke pursuant to his official responsibilities, and thus without First Amendment protection, based on its examination of the form, context, and content of the speech.  The District Court noted that the audience for that speech "further support[ed]" its conclusion.  In fact, following this Court's precedent, *Thompson*, 530 F.3d 914 at 916, the District Court could properly have rested its decision entirely on its finding that Mr. Mpoy made comments to his supervisor that were "part and parcel" of his job concerns as a school teacher.  J.A. 71, 75-76.  That was not the basis for the District Court's decision in this case, however.

there were supervisors above him and below Ms. Rhee, his email to her was not made up the chain of command is without merit or support.

Mr. Mpoy's complaint fails to establish that he spoke with First Amendment protection. The form, content, context and audience of his speech all indicate he spoke as a public employee, not as a private citizen. The District Court did not err when it found that Mr. Mpoy spoke pursuant to his job responsibilities, and its decision should be upheld by this Court, in keeping with the substantial precedent supporting the District Court's decision.

## II.    Ms. Rhee Is Shielded from Mr. Mpoy's First Amendment Claim by the Doctrine of Qualified Immunity.

Mr. Mpoy's claim against Ms. Rhee under 42 U.S.C. § 1983 is barred because Ms. Rhee's functions as a school chancellor "are shielded from liability for civil damages insofar as [her] conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court in *Saucier v. Katz* established a two-part test for determining whether a government official is entitled to qualified immunity. 533 U.S. 194, 200-02 (2001). The court must determine whether "the facts alleged show the officer's conduct violated a constitutional right" and "whether the right was clearly established" at the time of the alleged violation. 533 U.S. at 201.

### A. Mr. Mpoy Has Not Adequately Pleaded a First Amendment Claim Against Ms. Rhee.

Mr. Mpoy's argument against qualified immunity fails as it does not satisfy the first prong of *Saucier v. Katz*. Ms. Rhee is shielded from personal liability in this matter, because as set forth in Section I, *supra*, Mr. Mpoy has not adequately pleaded facts that show Ms. Rhee violated Mr. Mpoy's constitutional rights.

### B. The Right of a Public Employee to Speak as Mr. Mpoy Did Is Not Clearly Established.

This Court has held that to answer the question of whether a right was clearly established, it looks to "cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view—if there is one." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (internal citation omitted). "The facts of such cases need not be 'materially similar' . . . but have only to show that 'the state of the law at the time of the incident gave the officer fair warning that his alleged misconduct' . . . was unconstitutional." *Id* (alterations in original). The contours of the right must have been sufficiently clear so that a reasonable officer would understand that what he or she was doing violated that right. *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001). The District Court correctly found that Mr. Mpoy "cannot plausibly claim that Rhee or Presswood could have been expected to know that their conduct violated Mpoy's rights." Mem. Op. at J.A. 78.

- 31 -

Mr. Mpoy argues that in the summer of 2008 it was clearly established that a public employee could not be terminated for making speech protected by the First Amendment. Mpoy Br. at 37. This statement, while undoubtedly true, is also insufficient because it is stated in too general of terms. "For purposes of qualified immunity, it is not enough for a plaintiff to allege that a defendant's conduct violated a right that is clearly established in *general terms*. Instead, the right the official is alleged to have violated must have been clearly established in a *more particularized . . . sense . . . .*" *Harbury v. Deutch*, 233 F.3d 596, 610 (D.C. Cir. 2000) (first alteration in original) (emphasis added) (internal quotation marks omitted) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It is nonsensical to argue that it should have been sufficiently clear to Ms. Rhee that Mr. Mpoy had First Amendment protection when he complained about his job to his supervisors in the manner he did. As described in Section I, *supra*, courts across the country have come to the opposite conclusion based on allegations remarkably similar to those in Mr. Mpoy's complaint. This includes case-law holding that a public teacher's reports to a school district administrator or chancellor about a school principal's interference with or misrepresentation of student evaluations was not protected by the First Amendment. *See, e.g.*, *Davis*, 518 F.3d at 315; *Kelly*, No. 09-CV-210 (JFB)(ETB), 2012 WL 1077677, at *13; *Adams*, 752 F. Supp. 2d at 428; *Shums*, 04-CV-4589 (DLI)(LB), 2009 WL 750126,

at *14-15.  Mr. Mpoy has identified no cases to the contrary, and those he has cited are easily distinguishable on their facts.  Furthermore, a Federal District Judge ruled below that, on these very allegations, Mr. Mpoy had not established a claim against Ms. Rhee for a First Amendment violation, and pointed to no less than ten different cases, a "substantial body of caselaw," where similar speech was deemed unprotected.  Mem. Op. at J.A. 74-75.  If all of those courts are wrong and Mr. Mpoy's speech was protected, then there is substantial disagreement among the leading legal minds in the country about the contours of that right, and no reasonable actor could be expected to know Mr. Mpoy's speech was protected.

Because Mr. Mpoy's First Amendment rights were not violated and because the right to speak as he did was not clearly established in 2008, Ms. Rhee deserves qualified immunity for liability arising from Mr. Mpoy's termination.

## CONCLUSION

Mr. Mpoy's speech was made as a teacher, not a citizen, and as such it was not protected by the First Amendment.  Mr. Mpoy cites no authority in support of his claim that his constitutional rights were violated.  Despite this lack of precedent, Mr. Mpoy claims his right to speak as he did without fear of discipline was clearly established over five years ago.  In essence, Mr. Mpoy has asked this Court to break from its own precedent, split from its sister circuits, and write new law – and then make its holding retroactive to 2008 to deprive Ms. Rhee of

qualified immunity.  Mr. Mpoy's positions are unsupported, and his complaint was

properly dismissed by the District Court.  This Court should affirm that decision.

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: /s/ William L. Drake
William L. Drake (Bar # 54517)
1330 Connecticut Ave. NW
Washington, DC 20036
Phone: 202-429-3000
WDrake@steptoe.com

*Counsel for Defendant-Appellee
Michelle Rhee*

Dated:      August 9, 2013

## <u>Certificate of Compliance with Type-Volume Limitation,<br>Typeface Requirements, and Type Style Requirements</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[x]    this brief contains 7,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x]    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in fourteen point Times New Roman, or

[ ]    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

   /s/ William L. Drake
William L. Drake
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Phone: 202-429-3000
WDrake@steptoe.com
*Counsel for Defendant-Appellee*
*Michelle Rhee*

August 9, 2013

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| **BRUNO K. MPOY,** | ) | |
| **Plaintiff-Appellant,** | ) | |
| **v.** | ) | **Case No. 12-7129** |
| **MICHELLE RHEE, et al.,** | ) | |
| **Defendant-Appellees.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, William L. Drake, hereby certify that an original and eight copies of Defendant-Appellee Michelle Rhee's Brief were hand-delivered to the Clerk's Office, U.S. Court of Appeals for the District of Columbia Circuit, 333 Constitution Avenue NW, Washington, DC 20001, this 9th day of August 2013.

I further certify that two copies of Defendant-Appellee Michelle Rhee's Brief have been sent, this 9th day of August 2013, to the following, by United States mail, first-class postage prepaid:

Richard Stuart Love
Todd Sunhwae Kim
Donna M. Murasky
Office of the Attorney General, District of Columbia
Office of the Solicitor General
441 4th Street, NW
One Judiciary Square, Sixth Floor
Washington, DC 20001-2714
Email: richard.love@dc.gov
Email: todd.kim@dc.gov
Email: donna.murasky@dc.gov
*Counsel for Defendant-Appellee Donald Presswood*

Stewart S. Manela
Jason D. Moore
Rachel M. Witriol
Arent Fox LLP
1717 K Street, NW
Washington, DC 20036-5342
Email: stewart.manela@arentfox.com
Email: jason.moore@arentfox.com
Email: rachel.witriol@arentfox.com
*Counsel for Plaintiff-Appellant Bruno K. Mpoy*

I further certify that the foregoing document was served on all parties or

their counsel of record through the CM/ECF system this 9th day of August 2013.

  /s/ William L. Drake
William L. Drake (Bar # 54517)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Phone: 202-429-3000
WDrake@steptoe.com
*Counsel for Defendant-Appellee*
*Michelle Rhee*

Dated:    August 9, 2013